IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| RONALD FORGUE, | ) | |
|     Plaintiff, | ) | |
|     v. | ) | |
| | ) | Hon. Judge Norgle |
| CITY OF CHICAGO, Superintendent Garry | ) | |
| McCarthy, Superintendent John Escalante, | ) | No:   15-cv-8385 |
| Internal Affairs Division Chief Juan Rivera, | ) | |
| Internal Affairs Deputy Chief Eddie Welch III, | ) | |
| Chicago Police Department Director of Human | ) | |
| Resources Donald J. O'Neill, Sergeant Dennis | ) | |
| Smith, Sergeant James Ballaeur, Officer Matthew | ) | |
| O'Brien,Officer James Bansley, Lieutenant Valery | ) | |
| Roytman, Sergeant Dave Kinney, Sergeant John | ) | |
| Maples, Star 1999, Sergeant Therese Riley, | ) | |
| Dennis O'Brien, Kristy Yanney, Star 15765, Chris | ) | |
| Liakopoulos, Star 1135, Sean O'Brien, Star 13098, | ) | |
| Andrew McGlynn, 9815, John Healy, Star 6416, | ) | |
| James Bailey, Jr., Star 13137, Gina Zubeck, | ) | |
| Star 3931, Scott Straka, Star 2767,Frank Quinn, | ) | |
| Star 15331, Joseph Waszak, Star 19258, Patrick | ) | |
| O'Connor, 18395, Peter Glynn, Star 19535, Steven | ) | |
| Kelnosky, Star 10972, John Healy, Star 6413, | ) | |
| Christa Barton, Star 13036, Timothy Hayes, Star | ) | |
| 7308, Michael Wilocki, Star 87112,  Robert Robles, | ) | |
| Star 18834, Sgt. Matt Kolasa, Star 2085, David | ) | |
| Bachler, Star 9744, Craig Coglianese, Star 19028, | ) | |
| Juan Luera, Star 16843, Gary Kirkilas, Star 14048, | ) | |
| Sean Carrol, Star 8687, Joseph Montesdeoca, Star | ) | |
| 10445, Robert Quintero, Star 17017, Michael | ) | |
| Putrow, Star 9758, and Timothy Gaskin, Star 17934,) | | |
|     Defendants. | ) | **JURY DEMANDED** |

**FIRST AMENDED COMPLAINT**

NOW COMES the Plaintiff, RONALD FORGUE, by and through his attorneys, Brendan Shiller

and Mary J. Grieb of the Shiller Preyar Law Offices; and Susan Ritacca, complaining of

Defendants, and in support thereof states as follows:

1

## INTRODUCTION

1. This action is brought pursuant to 42 U.S.C. § 1983 to address deprivations of Plaintiff's rights under the Constitution of the United States and the laws of the State of Illinois.

## JURISDICTION

2. The jurisdiction of this Court is invoked pursuant to the Civil Rights Act, 42 U.S.C. § 1983; the Judicial Code, 28 U.S.C. §§ 1331 and 1343(a); the Constitution of the United States; and pendent jurisdiction for state claims as provided in 42 U.S.C. § 1367(a).

## VENUE

3. Venue is proper pursuant to 28 U.S.C. § 1391(b). The events alleged within all occurred in the Northern District of Illinois.

## THE PARTIES

4. Plaintiff Ronald Forgue is a United States citizen and former employee of the City of Chicago.

5. Superintendent Garry McCarthy, Sergeant Dennis Smith, Sergeant James Ballaeur, Officer Matthew O'Brien, Officer James Bansley, Lieutenant Valery Roytman, Sergeant Dave Kinney, Sergeant John Maples, Star 1999, Sergeant Therese Riley, and Sergeant Dennis O'Brien are present or former employees of the City of Chicago. These individual Defendants engaged in the conduct complained of while on duty, in the course and scope of their employment and under color of law. Defendants are sued in their individual capacity.

6. Defendant Chicago police officers Kristy Yanney, Star 15765, Christopher Liakopoulos, Star 1135, Sean O'Brien, Star 13098, Andrew McGlynn, 9815, John Healy, Star 6416, James Bailey, Jr., Star 13137, Gina Zubeck, Star 3931, Scott Straka, Star 2767, Frank

Quinn, Star 15331, Joseph Waszak, Star 19258, Patrick O'Connor, 18395, Peter Glynn, Star 19535, Steven Kelnosky, Star 10972, John Healy, Star 6413, Christa Barton, Star 13036, Timothy Hayes, Star 7308, Michael Wilocki, Star 87112, Robert Robles, Star 18834, Sgt. Matt Kolasa, Star 2085, David Bachler, Star 9744, Craig Coglianese, Star 19028, Juan Luera, Star 16843, Gary Kirkilas, Star 14048, Sean Carrol, Star 8687, Joseph Montesdeoca, Star 10445, Robert Quintero, Star 17017, Michael Putrow, Star 9758, Timothy Hayes, Star 7308, Sergeant John Maples, and Timothy Gaskin, Star 17934, are present or former employees of the City of Chicago. These individual Defendant officers engaged in the conduct complained of while on duty, in the course and scope of their employment and under color of law. Defendants are sued in their individual capacity.

7. Defendants Superintendent John Escalante, Internal Affairs Division Chief Juan Rivera, Internal Affairs Deputy Chief Eddie Welch III, and Chicago Police Department Director of Human Resources Donald J. O'Neill are present or former employees of the City of Chicago. These individual Defendants engaged in the conduct complained of while on duty, in the course and scope of their employment and under color of law. Defendants are sued in their individual capacity.

8. Defendants Unknown Chicago Police Officers are present or former employees of the City of Chicago. Unknown Chicago Police Officers engaged in the conduct complained of while on duty, in the course and scope of their employment and under color of law. Defendants are sued in their individual capacity.

9. Defendant City of Chicago is a municipal corporation duly incorporated under the laws of the State of Illinois, and is the employer and principal of all Defendant Officers. At all

times relevant hereto, Defendant Officers were acting under the color of law and within the scope of their employment with Defendant City of Chicago.

## BACKGROUND

10. From 1986 to 2015, Plaintiff was employed by the City of Chicago Police Department.

11. Plaintiff was assigned to the Alternate Response Unit as a Commanding Officer.

12. Plaintiff had previously been the Operations Lieutenant for the 006th District, incident team Sergeant in the 005th District, and prior to these, worked for the Internal Affairs Division (hereinafter "IAD"), among other assignments.

13. Forgue was disciplined in 2007 for sending a message in Spanish over the Department PDT.

14. No records of this alleged message were ever documented. The allegation was based off of the testimony of one female City of Chicago employee.

15. This same female employee approached Plaintiff after he had been disciplined for the alleged offense. The female employee warned Plaintiff that IAD had contacted her and asked her if she had wanted to file sexual harassment claims against Plaintiff.

16. Plaintiff has never committed any acts of sexual harassment.

17. When appointed to an incident team in 2012, Plaintiff became subject to rumors that his subordinates refused to work for him because he is Hispanic.

18. In 2012, Plaintiff confronted his superior Lieutenant with testimony from officers that white officers working under him were "spitting tobacco in black families' homes when on calls". Plaintiff was laughed at and told by his superior Lieutenant to "not mess with his boys".

19. Subsequently, nothing was done about this practice.

20. Defendants were aware of these acts of misconduct that subsequently created a racially hostile environment against Plaintiff, were in a position to condemn and stop the acts of misconduct and retaliation against Plaintiff, but allowed the racially hostile environment to continue.

21. On May 5, 2012, Plaintiff's uncle passed away. Plaintiff called Sergeant Eric Jackson to notify the department of his upcoming absence so he could attend the wake and funeral. Sergeant Eric Jackson told him "he would take care of it".

22. On May 6, 2012, Plaintiff received a voicemail from Sergeant Dennis Smith that he was supposed to be at work.

23. On May 6, 2012, Plaintiff called Sergeant Dennis Smith back to explain he was at the funeral, but was told he would receive an Absence Without Pay, or "AWOP".

24. Plaintiff's contract with the Chicago Police Department allows for a day off for a funeral with pay.

25. On May 8, 2012 Plaintiff returned to work and held roll call.

26. Plaintiff explained the importance of the proper procedure to follow for death notifications.

27. At this roll call, Plaintiff joked that "if the officers saw Sergeant Dennis Smith with an ice pack, he didn't do it".

28. On May 12, 2012, Sergeant James Ballauer created a general offense case report number HV 280594 alleging assault by Plaintiff towards Sergeant Dennis Smith for his comment.

29. From May 12, 2012 until September 2014, seven complaints were made against Plaintiff by members of the Chicago Police Department, in retaliation against his leadership as a sergeant and lieutenant because he followed proper procedure.

30. On November 12, 2012, Plaintiff made a complaint against Officer Matthew O'Brien and Officer James Bansley.

31. Plaintiff made the November 12, 2012 complaint due to Plaintiff's son being unlawfully taken from a vehicle by Officers Matthew O'Brien and James Bansley, who then proceeded to drive Plaintiff's son around before interrogating him at the police station for two hours. Plaintiff's son was never charged for any crimes.

32. On November 20, 2013, a poster with Plaintiff's picture and the words "sex offender" were distributed and posted at the police station Plaintiff worked at.

33. Plaintiff sent a complaint to Lieutenant Valery Roytman regarding the poster.

34. Lt. Roytman stated that Plaintiff was worried about bathroom wall memos and did nothing.

35. On March 24, 2014, Plaintiff reported to IAD that a booking photo and rap sheet of his son was being distributed around the 5th District by a Sergeant Dave Kinney.

36. Also on March 24, 2014, Plaintiff complained to IAD that someone had created a fake Facebook page made under his name with the words "IAD INFORMANT" printed on his photo.

37. The fake Facebook page also posted on the Facebook page of the Chicago Mayor's Office, stating in the comments section "The mayor's office is not doing a very good job. I was assured that all evidence against me was covered up and destroyed."

38. The fake Facebook page contains additional posts which publicly disparage Plaintiff.

39. As of September 23, 2015, no action has been taken by the Chicago Police Department to discipline the creators of the Facebook page, or to have the fake page removed.

40. This Facebook page only has two "friends", one is Sergeant Dennis O'Brien and the other appears to be the wife of a Chicago police officer.

41. The Facebook page does not depict the true or actual feelings of Plaintiff, is embarrassing and outrageous, and is damaging to his reputation as law enforcement official.

42. On July 13, 2014, Sergeant John Maples, Star 1999 and Sergeant Terry arrived at Plaintiff's home and attempted to execute a "Consent to Search" form so that they could search Plaintiff's home; when Plaintiff answered the door, they told him they did not realize it was his home.

43. Between June 2012 and January, 2015, Plaintiff's three sons had been stopped by the Chicago police a total of 22 times.

44. The three sons have been labeled within the department as gang members.

45. Plaintiff's sons are not affiliated with gangs.

46. Plaintiff's sons are being targeted due to Plaintiff's complaints to IAD and due to Plaintiff's reputation as an officer who follows Chicago Police Department rules and regulations.

47. In approximately the past two years, Plaintiff's sons have been arrested, handcuffed and detained, and/or stopped and had a contact card filled out about 20 times.

48. The majority of the reasons given for the stops and/or arrests were false.

49. Most of the stops have been within a few blocks of the boys' home in Chicago.

50. The officers who stopped and/or arrested Plaintiff's sons are as follows: Kristy Yanney, Star 15765, Christopher Liakopoulos, Star 1135, Sean O'Brien, Star 13098, Andrew McGlynn, 9815, John Healy, Star 6416, James Bailey, Jr., Star 13137, Gina Zubeck, Star 3931, Scott Straka, Star 2767, Frank Quinn, Star 15331, Joseph Waszak, Star 19258,

Patrick O'Connor, 18395, Peter Glynn, Star 19535, Steven Kelnosky, Star 10972, John Healy, Star 6413, Christa Barton, Star 13036, Timothy Hayes, Star 7308, Michael Wilocki, Star 87112, Robert Robles, Star 18834, Sgt. Matt Kolasa, Star 2085, David Bachler, Star 9744, Craig Coglianese, Star 19028, Juan Luera, Star 16843, Gary Kirkilas, Star 14048, Sean Carrol, Star 8687, Joseph Montesdeoca, Star 10445, Robert Quintero, Star 17017, Michael Putrow, Star 9758, Timothy Hayes, Star 7308, Sergeant John Maples, Timothy Gaskin, Star 17934, and Sergeant Dennis Smith.

51. Plaintiff's sons continue to be targeted for unlawful stops, sent notices for ordinance violations, and otherwise harassed to the present day.

52. On August 3, 2014, Plaintiff made a complaint to IAD after his son Jacob was grabbed by the neck and beaten in front of their house by Officer O'Connor. This complaint was made as a father about conduct directed at Forgue's son and was not made within the scope of Forgue's employment.

53. As a concerned father and citizen, Forgue has made several comments and complaints regarding the false stops of his sons over the last two years.

54. On September 23, 2014, Plaintiff was detailed out of his district to unit 376, on the orders of Defendant Garry McCarthy.

55. Unit 376 is the Alternative Response Unit, a less desirable position which was punishment for Plaintiff's complaints to IAD.

56. As stated in Plaintiff's contract, after being detailed out of his district, he should be receiving time and a half pay. Plaintiff did not receive time and a half pay.

57. Plaintiff contacted his Union, but was told that he was not in favor because of the complaints he made to the Independent Police Review Authority (IPRA) and IAD.

58. At several different times during the course of being a Chicago Police Officer, Plaintiff Forgue has been approached by other officers and asked "why he dates black women", and has had other discriminatory and harassing comments alleged to his person.

59. Since 2012, Plaintiff has been passed over for promotions to higher ranks in the Chicago Police Department.

60. Other high-ranking Chicago police officers who have not made complaints to IPRA and IAD have been promoted over Plaintiff.

61. Additionally, the City of Chicago failed to reimburse Plaintiff for tuition expenses.

62. In 2015, Plaintiff Lieutenant Forgue had completed more than twenty-nine years of active service as a sworn peace officer in the employ of Defendant, City of Chicago.

63. On or about August 13, 2015, Lieutenant Forgue made known his intentions to retire from the Police Department of the City of Chicago by surrendering his active duty card and other issued police equipment to the Personnel Division of Human Resources, Director Donald J. O'Neill.

64. At all times relevant hereto it was the policy and practice of the Chicago Police Department, and in particular Defendants Police Superintendent John Escalante, and Donald J. O'Neill, to issue what is known as a "retired identification card" to those sworn peace officers employed by Defendant City of Chicago who retire for pension purposes, such as Lieutenant Forgue.

65. Pursuant to Chicago Police Department General Order U01-01, section IX(A)(7), a sworn member who leaves the Department in good standing and has served a minimum of 10 years creditable service is eligible for the retirement identification card.

66. As memorialized by the union contract between the Police Department and the City of Chicago, a determination of good standing is within the discretion of the Superintendent.

67. At all times relevant hereto there was in force and in effect a certain statute in the United States Code known as "Carrying of concealed firearms by qualified retired law enforcement officers" (e.g., 18 USC Section 926C) which provides that a "retired law enforcement officer" (such as plaintiff) "who is carrying identification required by subsection (d) may carry a concealed firearm".

68. On information and belief, Internal Affairs Division Chief Juan Rivera, Internal Affairs Deputy Chief Eddie Welch III, Director of Human Resources Donald J. O'Neill and/or other Unknown Defendant Officers did not give Plaintiff his retirement star in retaliation for Plaintiff's prior complaints to IAD regarding improper conduct.

69. On or about August 14, 2015 Sergeant Yolanda Talley, Star 1564, an employee within the Human Resources Department of the Chicago Police Department, informed Lieutenant Forgue that his star was being withheld by IAD.

70. On or about November 2015, Internal Affairs Deputy Chief Eddie Welch III informed Lieutenant Forgue that his star was being withheld by Director of Human Resources Donald J. O'Neill.

71. On or about November 2015, Randall Bacon, an investigator with the City of Chicago Internal Affairs Division, intimated to Lieutenant Forgue that his star was being withheld due to decisions made by senior Chicago Police Department Personnel.

72. As a result of Defendants' failure to give Plaintiff his retirement identification card, Plaintiff has been unable to carry a gun, procure benefits to which he is entitled, including health insurance, and secure other employment in law enforcement.

## COUNT I

### 42 U.S.C. § 1983 – First Amendment Retaliation

73. Plaintiff re-alleges and incorporates all of the allegations in the preceding paragraphs.

74. Plaintiff engaged in protected speech by filing certain complaints with IAD and/or IPRA about the conduct of officers towards Plaintiff's sons.

75. Some of these complaints were made as a concerned citizen outside the scope of Forgue's employment.

76. Defendants intentionally transferred Plaintiff to a different unit, overlooked a hostile work environment, failed to investigate a fake and defamatory Facebook page, passed Plaintiff over for promotions and caused an environment so hostile that Plaintiff was constructively terminated.

77. Defendants performed these retaliatory actions while acting under color of law.

78. Plaintiff's protected speech was a reason, alone or with other reasons that Defendants relied on when they took retaliatory actions against Plaintiff.

79. By reason of the conduct and collusion of all the defendants, the plaintiff Lieutenant Forgue was deprived by his statutory rights and entitlements specifically created by 18 U.S.C. 926C pursuant to legislation by the Congress of the United States of America.

80. The deprivation of the plaintiff's statutory rights and entitlements was without legal cause, legal justification and was illegally designed and undertaken by virtue of defendants' official positions and status under color of state law.

81. As a result of the misconduct inflicted by Defendants, Plaintiff suffered emotional distress, economic damages and harm to his reputation.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages, punitive damages, attorneys' fees, costs, and such other and additional relief as this Court deems equitable and just.

## **COUNT II**

### **42 U.S.C. § 1983 - Equal Protection – Class of One**

65. Plaintiff re-alleges and incorporates all of the allegations in the preceding paragraphs.

66. The individual Defendant Officers have targeted Plaintiff by filing false complaints against him, discriminating against him in conditions of his employment, and harassing and detaining his three sons for no reason..

67. Defendant Officers intentionally treated Plaintiff differently than others similarly situated.

68. There was no rational basis for the difference in treatment.

69. Defendant Officers were motivated by illegitimate animus against the Plaintiff.

70. The conduct and actions of the defendants, basing all of their investigations, harassment and the denial of the "retired identification card" on the fact that plaintiff complaint of misconduct within the department to IAD, was designed and intended to punish the plaintiff for obtaining a remedy in the law; to punish, impede and restrict his access to the court system of this state; and to chill his free exercise of the rights and privileges granted by the Constitution of the State of Illinois to those citizens of the United States residing in this state.

71. That conduct and those actions were designed and intended to deny the plaintiff the equal protection of the laws of the state of Illinois and the laws and rights granted under the Constitution and statues of the United States of America.

WHEREFORE, Plaintiffs demand judgment against the Defendants for compensatory damages, punitive damages, costs, and such other and additional relief that this Court deems equitable and just.

## COUNT III

### 42 U.S.C. § 1983 Civil Conspiracy to Interfere with Plaintiff's Rights
### As Against All Individual Defendants

72. Plaintiff re-alleges and incorporates all of the allegations in the preceding paragraphs.

73. Beginning in 2012, through and including the date of the filing of this Complaint, the individual Defendants and unknown Defendant Officers, among themselves, expressly or impliedly formed an agreement to violate Plaintiff's constitutional rights, including his rights under the First Amendment and his right to equal protection under the laws.

74. In furtherance of this conspiracy, the individual Defendants agreed to target and harass Plaintiff's sons by unlawfully stopping and arresting them, create a false and defamatory Facebook page in Plaintiff's likeness, transfer Plaintiff from various positions he held, fail to promote Plaintiff, file false IAD complaints against him, create a hostile work environment, fail to honor the conditions of his employment contract, and take other unlawful actions.

75. Furthermore, Defendants took the acts set forth *supra*, in the preceding paragraphs of this Complaint, in furtherance of their agreement to deprive Plaintiff of his constitutional rights.

76. As a result of this conspiracy to deprive Plaintiff of his constitutional rights, Plaintiff was injured, including changes in the conditions of his employment, lost wages and emotional distress, among other damages.

WHEREFORE, Plaintiff demands judgment against the individual Defendants, jointly and severally, for compensatory damages, punitive damages, costs, and attorneys' fees, and such other and additional relief as this court deems equitable and just.

## COUNT IV

### 42 U.S.C. § 1983 – Procedural Due Process

77. Plaintiff re-alleges and incorporates all previous paragraphs.

78. At all times relevant hereto there was in force and in effect a certain statute in the United States Code known as "Carrying of concealed firearms by qualified retired law enforcement officers" (e.g., 18 USC Section 926C) which provides that a "retired law enforcement officer" (such as plaintiff) "who is carrying identification required by subsection (d) may carry a concealed firearm". State law also gave Plaintiff a protectable property interest in his employment so that he may not be displaced without due process.

79. Additionally, Plaintiff was entitled to a retirement identification card.

80. Defendants withheld and continue to withhold Plaintiff's retirement identification card.

81. Plaintiff was given neither a chance to respond nor a full and fair hearing before he was denied his retirement identification card.

82. This denial of Plaintiff's due process rights was in violation of the Fourteenth Amendment.

83. Defendants intentionally engaged in unlawful practices with the purpose and effect of depriving Plaintiff of procedural due process in violation of the due process clause of the Fourteenth Amendment.

84. Defendants' acts were intentional, willful, and malicious and/or in reckless disregard of Plaintiff's rights as secured by 42 U.S.C. 1983 and the U.S. Constitution.

85. As a result of Defendants' actions, Plaintiff suffered loss of income and emotional distress.

WHEREFORE, Plaintiff demands judgment against the Defendant Officers, jointly and severally, for compensatory damages, punitive damages, costs and attorney's fees and such other and additional relief that this court deems equitable and just.

## COUNT V

### Defamation Against Unknown Defendant(s)

86. Plaintiff re-alleges and incorporates all of the allegations in the preceding paragraphs.

87. Plaintiff enjoys the position of Lieutenant within the Chicago Police Department.

88. Plaintiff has enjoyed a good reputation and holds a position that is contingent on commanding respect within the City of Chicago and within his department.

89. The publishing of the fake Facebook page with the false statements has impugned Plaintiff Forgue's character, integrity, and his employment position within the Chicago Police Department.

90. The false statements published on this page are viewable by the public.

91. The false statements published on this page directly harmed the Plaintiff in his position as a Lieutenant by questioning his character and integrity, and by implying that he asked the Mayor's Office to hide evidence pertaining to his job and position.

92. Unknown Defendant(s) published this page and comments willfully and maliciously, with the intention of harming Plaintiff's good reputation and employment with the Chicago Police Department.

93. As a result of these publications, Plaintiff has been injured in his personal and employment capacity.

15

94. Unknown Defendants are or were agents and employees of the Defendant City of Chicago and were at all relevant times acting within the scope of their employment.

WHEREFORE, Plaintiff demands judgment against Defendant City of Chicago, and Unknown Chicago Police Officers for compensatory damages, punitive damages, costs, and such other legal and additional relief that this Court deems equitable and just.

## COUNT VI

### Illinois Whistleblower Act – 740 ILCS 174/10
### Against Defendant City of Chicago

95. Plaintiff re-alleges and incorporates all of the allegations in the preceding paragraphs.

96. Between March of 2014 and September of 2014, Plaintiff reported what he suspected were violations of Illinois law to IAD and/or IPRA, which are law enforcement agencies. Specifically, IPRA is an independent law enforcement agency charged with investigating the actions of Chicago Police and the Chicago Police Department.

97. Those suspected violations included but were not limited to an individual creating a fake and defamatory Facebook page bearing Plaintiff's likeness and Chicago police officers using excessive force against, and falsely arresting, his sons.

98. As a result of Plaintiff reporting suspected violations, he suffered adverse actions, including being transferred from his position and detailed to Unit 376 and being passed over for promotions.

99. Garry McCarthy made the decision to transfer Plaintiff to a different unit on September 23, 2014.

WHEREFORE, Plaintiff demands judgment against the Defendant City of Chicago for compensatory damages, costs, attorneys' fees and costs, and such other and additional relief as this Court deems equitable and just.

## COUNT VII

### State Claim – Intentional Infliction of Emotional Distress

100. Plaintiff re-alleges and incorporates all of the allegations in the preceding paragraphs.

101. The acts and conduct of Defendants set forth above were extreme and outrageous.

102. Said conduct included targeting Plaintiff for retaliation, creating a fake and defamatory Facebook account using Plaintiff's likeness, targeting and using excessive force against Plaintiff's sons and discriminating against Plaintiff in his employment.

103. Defendants intended to cause, or was in reckless disregard of the probability that their conduct would cause, severe emotional distress to Plaintiff.

104. Said actions and conduct did directly and proximately cause severe emotional distress to Plaintiff and thereby constituted intentional infliction of emotional distress.

105. Defendant Officers' conduct was undertaken with malice, willfulness, and reckless indifference to the rights of Plaintiff.

106. As a proximate result of Defendant Officers' wrongful acts, Plaintiff suffered damages, including severe emotional distress.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages, costs, and such other and additional relief as this Court deems equitable and just.

## COUNT VIII
### Indemnity Claim - 745 ILCS 10/9-102 Against City of Chicago

107. Plaintiff re-alleges and incorporates all of the allegations in the preceding paragraphs.

108. Defendant City of Chicago is the employer of all individual Defendant Officers.

109. Defendant Officers committed the acts alleged above under color of law and in the scope of his employment as an employee of the City of Chicago.

110. In Illinois, public entities are directed to pay for any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities. 745 ILCS 10/9-102.

111. As a proximate cause of Defendant Officers' unlawful acts, which occurred within the scope of his employment activities, Plaintiff suffered physical and emotional injuries.

WHEREFORE, Plaintiff demands judgment against the City of Chicago for compensatory damages, attorney's fees, costs, medical expenses, and such other and additional relief as this court deems equitable and just.

## COUNT IX
### *Respondeat Superior* Liability Against City of Chicago for State Law Claims Against Individual Defendants

112. Plaintiff re-alleges and incorporates all previous paragraphs.

113. Defendant City of Chicago is the employer of Defendant Officers.

114. Defendant City of Chicago is liable for its employees' actions committed while in the scope of their employment as duly appointed police officers under the doctrine of *respondeat superior*.

115. The acts of Defendant Officers described in the state-law claims specified above were willful and wanton and committed in the scope of their employment as employees of the Defendant City of Chicago.

116. As a proximate cause of the Defendant Officers' unlawful acts, which occurred within the scope of his employment activities, Plaintiff was injured.

WHEREFORE, Plaintiff demands judgment against Defendant City for compensatory damages, costs, and such other and additional relief that this Court deems equitable and just.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

Respectfully submitted,

RONALD FORGUE
By His Attorneys:


s/Brendan Shiller
Brendan Shiller

s/Mary J. Grieb
Mary J. Grieb
The Shiller Preyar Law Offices
601 S. California Ave.
Chicago, Illinois 60612
312-226-4590